IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| DENNIS HUGHES, | : | CIVIL ACTION NO. **3:CV-10-1443** |
| | : | |
| Plaintiff | : | (Judge Mannion) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| KEVIN MISKELL, *et al.*, | : | |
| | : | |
| Defendants | : | |

## **REPORT AND RECOMMENDATION**

**I.**     **Background.**

On July 13, 2010, Plaintiff, Dennis Hughes, an inmate at the State Correctional Institution at Dallas ("SCI-Dallas"), Dallas, Pennsylvania, filed, through counsel, the instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff properly filed his action in the United States District Court for the Middle District of Pennsylvania since he was an inmate in the Middle District of Pennsylvania, and his claims related to his confinement in the Middle District of Pennsylvania. Also, all of the Defendants are located in the Middle District of Pennsylvania.[1]

Plaintiff paid the filing fee and the Clerk of Court immediately issued the summons as to Defendants. (Doc. 2).[2]

---

[1]Plaintiff attached several exhibits to his original Complaint.
Plaintiff originally named the following six (6) Defendants: Kevin Miskell, Psychiatry Manager; Thomas Leskowsky, Director of Health Care Services; Prison Health Services; Dr. Stanley Stanish; Richard Ellers, Chief of Clinical Services for the PA DOC; and Dr. Stanley Bohinski, Medical Director at SC-Dallas. (Doc. 1, pp. 3-4). However, Plaintiff did not include Defendants Ellers and Bohinski in the caption of his original Complaint.

[2]The Clerk's Office failed to forward Plaintiff's Complaint to the Court for mandatory screening under the PLRA. Notwithstanding Plaintiff's payment of the filing fee, the Prison

As Plaintiff recognized, this Court had jurisdiction over his § 1983 civil rights case pursuant to 28 U.S.C. § 1331 and § 1343. (Doc. 1, p. 2).

All Defendants joined in the filing of one of two Motions to Dismiss the original Complaint. (Docs. 10 and 12). On October 12, 2010, Plaintiff filed an Amended Complaint *sans* exhibits. (Doc. 14). Plaintiff again named the following six (6) Defendants: Kevin Miskell, Psychiatry Manager; Thomas Leskowsky, Director of Health Care Services; Prison Health Services; Dr. Stanley Stanish; Richard Ellers, Chief of Clinical Services for the PA DOC; and Dr. Stanley Bohinski, Medical Director as SCI-Dallas. (Doc. 14, pp. 3-5). Plaintiff included Defendants Ellers and Bohinski in the caption of his Amended Complaint. Plaintiff's amended pleading mooted Defendants' Motions to Dismiss his original pleading. In his Amended Complaint, Plaintiff sued the five individual Defendants only in their personal capacities.

On October 25, 2010, Defendants Prison Health Services, Dr. Stanley Stanish, and Dr. Stanley Bohinski ("PHS Defendants") jointly filed a Motion to Dismiss Plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), with attached exhibits (Ex. A, Plaintiff's Amended Complaint and Ex. B, a copy of Plaintiff's October 14, 2009 Grievance). (Doc. 17). PHS Defendants simultaneously filed their support brief. (Doc. 18).

---

Litigation Reform Act of 1995 (the "PLRA") obligates the Court to engage in a screening process. *See Vega v. Kyler*, C.A. No. 03-1936 (3d Cir.2004) 2004 WL 229073 (Non-precedential) (if prisoner pays filing fee, civil rights complaint is subject to review under 28 U.S.C. § 1915(A)(b) and not 28 U.S.C. § 1915(e)(2)(B)). *See also Vieux v. Smith*, 2007 WL 1650579 (M.D. Pa.); *Hart v. Whalen*, 2008 WL 4107651, (M.D. Pa.).

On October 29, 2010, remaining Defendants, Kevin Miskell, Thomas Leskowsky, and Richard Ellers ("Corrections Defendants"), jointly filed a Motion to Dismiss Plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 19). On the same day, Corrections Defendants filed their support brief with attached unpublished opinions. (Doc. 20). On November 15, 2010, Plaintiff filed his briefs in opposition to the Rule 12(b)(6) Motions to Dismiss of Corrections Defendants and PHS Defendants. (Docs. 22 and 23, respectively). Plaintiff also attached exhibits in support of his opposition briefs. (Doc. 22-1).

Both Rule 12(b)(6) Motions to Dismiss Plaintiff's Amended Complaint were ripe for disposition. We addressed the Rule 12(b)(6) Motions to Dismiss of Corrections Defendants (Doc. 19) in a Report and Recommendation ("R&R") dated December 28, 2010.[3] (Doc. 25). We recommended that the Motion to Dismiss Plaintiff's Amended Complaint of Corrections Defendants, Miskell, Leskowsky, and Ellers (Doc. 19), be granted as to all Fourteenth Amendment claims since Plaintiff did not have a constitutional right to single cell housing and Z-code status. We also recommended that the Motion to Dismiss Plaintiff's Amended Complaint of Corrections Defendants be denied with respect to all of Plaintiff's Eighth Amendment denial of proper medical care claims against them.[4]

Further, we recommended that the Motion to Dismiss of Corrections Defendants be granted

---

[3]*See Hughes v. Miskell*, 2010 WL 8499990 (M.D. Pa. Dec. 28, 2011), adopted by 2012 WL 928428 (MD. Pa. March 19, 2012).

[4]In our R&R regarding PHS Defendants' Motion to Dismiss, we recommended that all of Plaintiff's claims against all Defendants, both PHS Defendants and Corrections Defendants, under the Fifth Amendment and Ninth Amendment be dismissed with prejudice.

with respect to Plaintiff's Title II ADA claim, and that this claim be dismissed with prejudice as against these Defendants in their individual capacities. We also recommended that the Court allow Plaintiff to file a second amended complaint only to sue the Corrections Defendants in both their individual and officials capacities with respect to his ADA claim and to set forth sufficient facts to assert a *prima facie* ADA claim against Corrections Defendants in their official capacities.[5]

We then issued an R&R on January 10, 2011, and recommended that the Motion to Dismiss Plaintiff's Amended Complaint of PHS Defendants, namely, PHS, Dr. Stanish and Dr. Bohinsky, be granted as to all of Plaintiff's claims against them. We also recommended that PHS Defendants be dismissed entirely from this action.[6] (Doc. 26).

On February 3, 2011 Plaintiff filed a Second Amended Complaint (Doc. 27) against Defendants Miskell, Leskowsky and Ellers. Subsequently, on July 20, 2011, Plaintiff filed a Motion to Compel Answer to his Second Amended Complaint with an attached certificate of service. (Doc. 28).

On July 25, 2011 Defendants Leskowsky, Ellers, and Miskell filed a Motion to Strike Plaintiff's Second Amended Complaint along with a Brief in Support of that Motion. (Docs. 29 and 30). On August 10, 2011, Plaintiff filed a Brief in Opposition of Defendants' Motion to Strike

---

[5]To the extent Plaintiff sought to amend his Amended Complaint to sue the three Corrections Defendants in both their official and individual capacities, we previously noted that he could not seek monetary damages against them in their official capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

[6]*See Hughes v. Miskell*, 2011 WL 7561387 (M.D. Pa. Jan. 10, 2011), adopted by 2012 WL 928428 (MD. Pa. March 19, 2012).

4

Plaintiff's Second Amended Complaint. (Doc. 31).

On March 19, 2012, the District Court filed a Memorandum and Order (Docs. 32 & 33) which stated the following: 1) The R & R (Doc. 25) as to Corrections Defendants' (Kevin Miskell, Thomas Leskowsky, and Richard Ellers) Motion to Dismiss Plaintiff's Amended Complaint is adopted; 1(a) Plaintiff's Fifth, Ninth, and Fourteenth Amendment claims against Corrections Defendants were dismissed with prejudice; 1(b) Plaintiff's ADA claim against Corrections Defendants in their individual capacities is dismissed. Plaintiff has 21 days to amend his [amended] complaint to file an ADA claim against Corrections Defendants in their individual and official capacities; and 1(c) Corrections Defendants' Motion to Dismiss Plaintiff's Eighth Amendment claims is denied.

In its Doc. 33 Order, the District Court also ruled on our Doc. 26 R&R as to PHS Defendants' Motion to Dismiss Plaintiff's Amended Complaint and adopted our R&R. All claims against PHS Defendants were dismissed with prejudice and PHS Defendants, namely, Prison Health Services, Dr. Stanley Stanish, and Dr. Stanley Bohinski, were dismissed entirely from the action. The District Court also granted Corrections Defendants' Motion to Strike Plaintiff's Second Amended Complaint (Doc. 29). The District Court further denied as moot Plaintiff's First Motion to Compel Answer to Plaintiff's Second Amended Complaint, and recommitted this case to the undersigned.

Thus, the remaining Defendants in this case are Miskell, Leskowsky, and Ellers ("Defendants"). As stated above, the only remaining claim against the Defendants are Plaintiff's Eighth Amendment denial of proper medical care claims.

On April 4, 2012, Plaintiff Hughes filed, through counsel, his Second Amended Complaint against Defendants Miskell, Leskowsky, and Ellers. (Doc. 34). Despite the language in the caption, Plaintiff sues all three remaining Defendants in his Second Amended Complaint only in their individual capacities. (*Id.*, pp. 3-4). On April 10, 2012, we Ordered the Clerk of Court to re-issue summons to counsel for the Plaintiff and directed Plaintiff's counsel to serve Plaintiff's Second Amended Complaint (Doc. 34) upon the three Defendants. (Doc. 35).

On May 11, 2012, Defendants jointly filed their Answer (Doc. 36) with Affirmative Defenses to Plaintiff's Second Amended Complaint. Subsequently, on May 23, 2012, Defendants Miskell, Leskowsky, and Ellers filed a Motion (Doc. 37) to take the deposition of Plaintiff Hughes. We granted that Motion with an Order (Doc. 38) on May 25, 2012. Further, we issued a Scheduling Order (Doc. 39) on May 12, 2012. The discovery deadline was set as July 12, 2012, and the deadline for dispositive motions was set as August 13, 2012.

Plaintiff Hughes filed a Motion for Extension of time to complete discovery until October 12, 2012, which we granted on September 4, 2012. (Docs. 42 and 43).

On November 13, 2012, after the close discovery, Defendants Leskowsky, Miskell, and Ellers jointly filed a Motion for Summary Judgment. **(Doc. 44).** Defendants also filed their Statement of Material Facts ("SMF") along with citation to evidence as required by Local Rule 56.1, M.D. Pa. (Doc. 45). Furthermore, on November 13, 2012, Defendants filed their Brief in Support of their Motion for Summary Judgment (Doc. 46) along with an Appendices (Docs. 47-49).

On December 7, 2012 Plaintiff filed a Motion for Extension of Time to respond to Defendants' Motion for Summary Judgment. (Doc. 50). That Motion was granted by our December

6

12, 2012 Order. (Doc. 51). Subsequently, on January 4, 2013, Plaintiff filed his Brief in Opposition to Defendants Motion for Summary Judgment with attached Exhibits. (Doc. 52). Plaintiff did not file a separate paragraph-by-paragraph response to Defendants' SMF as required by Local Rule 56.1.

On January 14, 2013, Defendants Miskell, Ellers, and Leskowsky filed their Reply Brief and two Supplemental Appendices. (Docs. 53, 54 & 55). Defendants' First Supplemental Appendix consists of Progress Notes regarding Plaintiff for August 31 2012, September 11, 2012, October 26, 2012, and October 29, 2012, in which Plaintiff requested a single cell, and a Physician's Order by Dr. Bohinski (a former Defendant in this case) dated October 29, 2012, ordering, in part, that Plaintiff be housed in a single cell, Z-Code status, for a skin rash. (Doc. 54). Defendants' Second Supplemental Appendix consists of the Declarations of Defendant Leskowsky and Defendant Miskell. (Doc. 55).

We will now address the Motion for Summary Judgment **(Doc. 44)** of Defendants Miskell, Ellers, and Leskowsky, since it is ripe for disposition.

## II.    Summary Judgment Standard.

A motion for summary judgment may not be granted unless there is not genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the suit. *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004). The moving party may demonstrate that no genuine dispute as to any material fact exists by citing to pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c). The reviewing court may consider any materials in the

record in determining whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c)(3). An issue of fact is "'genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving lack of genuine issue of material fact is initially on the moving party. *Childers*, 842 F.2d at 694 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden of proof shifts to the nonmoving party, however, when the moving party demonstrates no such genuine issue of fact. *Forms, Inc. v. Am. Standard, Inc.*, 546 F. Supp. 314, 321 (E.D. Pa. 1982), *aff'd. mem.*, 725 F.2d 667 (3d Cir. 1983). The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

In determining the existence of an issue of material fact, the reviewing court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). As such, the court must accept the nonmoving party's allegations as true and resolve any conflicts in his or her favor. *Id.* (*citing Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied*, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977).

### III.  Statement of Material Facts.

As mentioned, the Court has allowed Plaintiff's Eighth Amendment claims to proceed against Defendants Ellers, Leskowsky, and Miskell. As their first argument in support of their Summary Judgment Motion, Defendants assert that Plaintiff failed to exhaust his DOC

administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). *See Spruill v. Gillis*, 372 F.3d 218, 226 (3d. Cir. 2004)(Third Circuit held that the failure to exhaust administrative remedies by an inmate constitutes procedural default under the PLRA).

As stated, Defendants properly filed their SMF with citation to the evidence (Doc. 45, ¶'s 1-74), as required by Local Rule 56.1, M.D. Pa., which support their position that the evidence shows that Plaintiff did not exhaust his administrative remedies before filing his Complaint in federal court. Also, Defendants submitted exhibits with their SMF to support each one of their contentions. (Docs. 47 through 49; Docs. 54 & 55). Plaintiff failed to file his paragraph-by-paragraph response to Defendants' SMF, and we afforded Plaintiff and his attorney with ample opportunity to do so.

Since Defendants have properly filed their SMF in support of their Summary Judgment Motion (Doc. 45), as required by Local Rule 56.1 of M.D. Pa., and their facts are all properly supported by evidence, and since Plaintiff failed to properly respond to Defendants' SMF, we shall deem as admitted all of Defendants' facts contained in their SMF. *See Carpenter v. Kloptoski*, 2012 WL 911558, *1 (M.D. Pa. March 16, 2012)("Because Plaintiff [a pro se inmate in a §1983 civil rights action] has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement [] will be deemed admitted.").

Further, none of Defendants' facts in their SMF are properly disputed by Plaintiff with citation to evidence. Thus, we find that Plaintiff has not properly responded to Defendants' SMF as required by Local Rule 56.1, M.D. Pa. *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michatavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers*, 2008 WL 3540526 (M.D. Pa.); *Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.),

affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed). Regardless of Plaintiff's failure to properly respond to Defendants' statement of facts, we accept Defendants' statement of facts since they are all supported by their evidence. (Doc. 45). However, Plaintiff submitted a Brief in Opposition (Doc. 52) to Defendants' Motion for Summary Judgment with exhibits attached (Docs. 52-1 through 52-3) which we will consider.

According to Defendants' SMF, in Plaintiff's Grievance No. 266650 dated March 26, 2009, he complained about his medical and mental healthcare as well as housing accommodations. Defendant Leskowsky responded to Plaintiff's Grievance No. 266650 stating the following:

> You were referred to the psychiatrist PA O'Brien after you complained of mental health issued related to your double celling on sick call. Psychiatrist, Dr. Jane Jesse M.D., examined you on March 18, 2009. She indicated in her progress report that you do have anxiety related to your new housing situation (double-celling), however, she ruled out clinical depression. She offered you treatment and follow-up care. You agreed with her care plan, according to progress note from your exam.

(Doc. 45, ¶ 23).

Furthermore, Plaintiff was prescribed anti-anxiety medication, Vistaril, by Dr. Jesse. (*Id.*, ¶ 24). Defendants state that Plaintiff appealed Grievance No. 266650 to final review, but his appeal was dismissed for two reasons: "1) Grievances based upon different events must be presented separately, and 2) Grievance or appeal was not submitted timely." (Doc. 45, ¶ 24). *See* Defendants' Appendix Part II, Ex. P-4. Thus, Plaintiff's appeal to final review of his Grievance No. 266650 was dismissed by the DOC Chief Grievance Officer May 22, 2009. As such, the claims

raised in Plaintiff's Grievance No. 266650 were not fully exhausted due to the procedural default upon final appeal.

Additionally, Plaintiff's Grievance No. 266652 dated March 26, 2009, related to allegations raised in the instant case. Deputy Superintendent Walsh responded to Grievance No. 266652 and stated the following:

> You indicate that you saw Mr. Miskell on March 4, 2009, and he did not permit you to voice your concerns and you claimed that he verbally abused you and attempted to instigate physical misbehavior. I [Deputy Superintendent Walsh] did take the opportunity to interview [Defendant] Mr. Miskell regarding your claims and he indicated that he was not harsh or disrespectful in his contact with you. He also indicated that he did not yell at you, but he did speak with you matter-of-factly. He did indicate that you alluded to the fact that you were going to sue and pursue legal avenues. He also indicated that you refused to listen to reasons for single celling. He did indicate [that] you made a veiled threat toward him.

(Doc. 45, ¶ 25).

According to Defendants' SMF and their citation to Plaintiff's deposition transcript, Defendants' Appendices Part I & II, Plaintiff admitted that he told Defendant Miskell he was going to sue and pursue legal avenues. Plaintiff said this is because he believed it was a pre-requisite for filing a lawsuit. Furthermore, Defendants state that the denial of Plaintiff's Grievance No. 266652 was affirmed on final appeal. (*Id.*, ¶ 26 & Defendants' Appendix Part II, Ex. P-5). DOC Chief Grievance Officer (Varner) stated that "the [prison] psychiatrist does not make decisions about single-celling versus double-celling inmates. This is handled by appropriate [prison] staff." Thus, Plaintiff's appeal to final review of his Grievance No. 266652 was denied by the DOC Chief Grievance Officer August 4, 2009.

Plaintiff then submitted Grievance No. 286422 on August 24, 2009, in which he complained, in part, about not being given Z-Code single cell status due to his medical conditions, including constipation and irritable bowel syndrome. Plaintiff also appeared to complain about his need to frequently use the toilet and his need for constant access to a toilet of his own. (*Id.*, ¶ 27 & Defendants' Appendix Part II, Ex. P-6). Plaintiff requested that he be given access to [his] own toilet at all times while [he is] locked up, which is the only way to alleviate this medical problem." (Defendants' Appendix Part II, Ex. P-6). Plaintiff indicated that he spoke to the prison medical staff about his problems and need for Z-Code status. Plaintiff did not specifically mention the three remaining Defendants in this case in his Grievance No. 286422. Thus, Plaintiff wanted a single cell so that he would have the ability to use the toilet in his cell "in peace" and so that he would not be forced to wait to use the toilet as he would if he was double celled. Plaintiff stated that the solution was for the prison to give him Z-Code single cell status which would enable him to use his own toilet freely and frequently. Prison staff essentially advised Plaintiff that even though he was in a double cell, he had a toilet and that his alleged need to frequently go the bathroom was not a medical issue sufficient to warrant a Z-Code single cell status.

On September 8, 2009, Defendant Leskowsky responded to Plaintiff's Grievance No. 286422. Leskowsky stated the following in his Response:

> You do not currently have an approved disability accommodation (ADA accommodation). You do not have any preclusions from double celling from the medical department, nor do you have medical symptoms that warrant a single [cell] at this time. You also work in the school without work restrictions.

(Doc. 45, ¶ 27).

Defendant Leskowsky also advised Plaintiff that "someone using the toilet in [his] presence will not harm [him]." (Defendants' Appendix Part II, Ex. P-6).

Plaintiff appealed the denial of his Grievance No. 286422 to the Acting Superintendent (Walsh) and on September 23, 2009, Walsh upheld the denial of this Grievance. Walsh stated, in part, that Plaintiff was "under the care of the medical professionals and [that] they will determine the appropriate treatment/housing for [his] medical needs. All medical determinations will continue to be made by credential staff." (Defendants' Appendix Part II, Ex. P-6).

Plaintiff then appealed, to final review, the denial of his Grievance No. 286422 to the DOC Chief Grievance Officer (Varner) and on January 6, 2010, Varner denied Plaintiff 's Grievance. Varner stated that "the medical care given to [Plaintiff] by the medical department at SCI-Dallas has been reasonable and appropriate. You have no diagnosis of irritable bowel syndrome. Constipation and hemorrhoids are not grounds for a Z-Code assignment. You have not been approved for any disability accommodation." (Defendants' Appendix Part II, Ex. P-6).

Thus, we find that Plaintiff fully exhausted his DOC administrative remedies with respect to his Grievance No. 286422. We note that Plaintiff also attached copies of his various grievances and responses to his opposition brief, Doc. 52. (Docs. 52-1 & 52-2).

Additionally, Defendants state that Plaintiff is familiar with DOC Policy DC-006, relating to reasonable accommodations for inmates with disabilities. Defendants cite to Plaintiff's deposition testimony. (Defendants' Appendix Part I, p. 83). Defendants further state that Plaintiff is familiar with the procedure under the policy for requesting an accommodation. Defendants state that when Plaintiff was asked whether he filed a separate request for an accommodation under DC-ADM 006

13

("Reasonable Accommodation for Inmates with Disabilities"), Plaintiff stated "probably not formally." (Doc. 45, ¶ 28 & Defendants' Appendix Part I, p. 84).

Defendants state in their undisputed SMF that Plaintiff filed two separate grievances in which he stated he had bed bugs, *i.e.*, Grievance No. 291105 and Grievance No. 292612. Plaintiff's Grievance No. 291105 was rejected since it was based upon different issues. (Doc. 45, p. 10, ¶ 30 & Defendants' Appendix Part II, Ex. P-7). Plaintiff then filed, on October 14, 2009, Grievance No. 292612 concerning bed bugs and his claim that he contracted a contagious skin disease from his cell mate (Hodge). In denying Grievance No. 292612, Defendants state that Plaintiff was quoted on October 2, 2009, stating that he had an active skin condition and did not have bed bugs. Plaintiff Hughes also admitted that he was diagnosed with scabies and the skin conditions were not due to bed bugs. (Doc. 45, ¶31 & Defendants' Appendix Part II, Ex. P-8). Plaintiff's Grievance No. 292612 was denied by the prison Grievance Coordinator and on appeal by the prison Grievance Officer. Plaintiff did not submit a final appeal of his Grievance No. 292612 to the DOC Chief Grievance Officer (Varner). (Defendants' Appendix Part II, Ex. P-8).

Additionally, according to Defendants' SMF, the Central Office Inmate Disability Accommodation Committee ("COIDAC"), on which Defendant Ellers sat as Director (Chief) of the Bureau of Health Care Services, reviews inmates' requests for disability accommodations including requests for Z-Code single cell status. (Doc. 45, p. 12). Defendant Ellers has never worked at SCI-Dallas, and he is not familiar with Plaintiff Hughes and did not respond to any of Plaintiffs' Grievances. (Doc. 45, p. 13, ¶'s 38-39). However, some of Plaintiff's Grievances appeals were referred to the Bureau of Health Care Services and the Bureau was involved in the denial of those

Grievances. (*Id.*, ¶ 40).

Significantly, Plaintiff never requested an accommodation for any disability since the COIDAC took effect in January of 2009. (Doc. 45, ¶ 41).

Furthermore, according to the Defendants' SMF, a DOC Grievance Review Officer working in the DOC Secretary's Office, namely, Helen Shambaugh, reviewed DOC's records regarding all Grievances and appeals filed by Plaintiff from January 1, 2008 until July 13, 2010. Shambaugh stated that according to DOC's records, Plaintiff filed five (5) grievances to final review during the relevant time from January 1, 2008 until July 13, 2010. Of the five grievance appeals, the Grievance Review Office upheld the initial institutional [SCI-Dallas] responses in four of the appeals. The other appeal was dismissed because it was untimely. Defendants' SMF state that the four appeals where initial responses were upheld on final appeal, and thus fully exhausted, are as follows: 1) Grievance No. 266648 (housing/cell assignment); 2) Grievance No. 26652 (problems with staff) ; 3) Grievance No. 275835 (commissary); 4) and Grievance No. 286422 (health care). The dismissed Grievance appeal was Grievance No. 266650 (health care). (*Id.*, ¶'s 69-70).

As stated above, Plaintiff admitted that he did not make a formal request for a disability accommodation in accordance with the DOC Policy DC-ADM 006. Also, according to Defendants' SMF, Plaintiff never requested an accommodation for a disability according to COIDAC. Therefore, for the reasons outlined above the Defendants argue that Plaintiff failed to properly exhaust his DOC administrative remedies with respect to his remaining Eighth Amendment claims against each one of them. (*Id.*, ¶'s 1 through 74 & Doc. 46, pp. 3-7).

## IV. Discussion.

Plaintiff alleges that the conditions of his confinement at SCI-Dallas of being required to double cell with other inmates and denying his Z-Code single cell status violates his rights under the Eighth Amendment.[7] Plaintiff avers that his medical and mental health conditions required him to have Z-Code single status, including his need to frequently use the toilet and his claim that his cell mates gave him diseases in the past, such as skin rashes. Plaintiff also claims that he had difficulties with cell mates and that a cell mate was a source of stress for him exacerbating his conditions. Plaintiff must establish two elements in order to make out a prima facie case that Defendants' actions violated the Eighth Amendment's prohibition against cruel and unusual punishment with respect to prison conditions. *See Henry v. Wilson*, 2007 WL 2746717, *4-*5 (W.D. Pa. Sept. 17, 2007).

In *Mitchell v. Dodrill*, 696 F.Supp.2d 454, 466 (M.D. Pa. 2010), the Court stated:

> "The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). No static test determines whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D. Pa. 1989).
>
> To establish an Eighth Amendment claim, Mitchell must show that

---

[7]Plaintiff Hughes has been an inmate at SCI-Dallas since 1982. (Doc. 45, p. 18).

he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997) (quoting *Young v. Quinlan,* 960 F.2d 351, 359 (3d. Cir. 1992)). In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes,* 452 U.S. at 362-363. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth, or exercise- for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of single human need exists. *Wilson v. Seiter,* 501 U.S. 294, 304-305 (1991).

> In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id. at 298.* As described by the Supreme Court in *Farmer,* the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

Therefore, in order to establish an Eighth Amendment conditions of confinement claim, an inmate "must meet two requirements: (1) that 'the deprivation must be objectively, sufficiently

17

serious;' and (2) the 'prison official must have a sufficiently culpable state of mind.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d. Cir. 2001) (quoting *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970). Furthermore, a prison official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities,'" and the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw that inference." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *see also Henry v. Wilson*, 2007 WL 2746717, *4-*5.

### 1. Failure to Exhaust Administrative Remedies

Defendants' initial argument in support of their Summary Judgment Motion is that Plaintiff failed to fully exhaust his DOC administrative remedies with respect to his remaining Eighth Amendment claims against them. Exhaustion of administrative remedies in a civil rights action filed by an inmate is a threshold issue. *See Lasko v. Hendershot*, 2006 WL 2828787 (M.D. Pa. 9-29-06); *Hookey v. Lomas*, 2010 WL 936230, *6 (M.D. Pa. 3-15-10).

In particular, Defendants contend that the undisputed evidence as detailed in their SMF shows Plaintiff did not fully exhaust all of his grievances and, that the four grievances which Plaintiff did appeal to final review failed to mention Defendants Ellers and Leskowsky. Defendants also indicate that the undisputed evidence shows Plaintiff exhausted his DOC administrative remedies with respect to only a verbal abuse claim against Defendant Miskell, which is not a claim at issue in the present case, and that Plaintiff did not exhaust his instant Eighth Amendment claims against Miskell.

Notwithstanding the failure of Plaintiff's counsel to adhere to Local Rule 56.1 by responding, paragraph-by-paragraph, to any of Defendants' SMF, we also consider Plaintiff's Brief in Opposition of Defendants' Motion for Summary Judgment with attached Exhibits. (Docs. 52, 52-1 & 52-2). Plaintiff states that he sufficiently exhausted all of his administrative remedies against all three remaining Defendants. Plaintiff further states that Defendant Ellers was the Chief of Clinical Services of the Department of Corrections and had the ultimate authority to determine whether or not Plaintiff was entitled to Z-Code single cell status. Plaintiff further argues that Defendant Ellers reviewed his grievances and denied him of Z-Code single cell status as a reasonable accommodation for his disabilities. (Doc. 52, p. 7). Plaintiff cites to the Exhibits attached to his opposition brief. (Docs. 52-1 & 52-2). Plaintiff's Exhibits attached to his Doc. 52 brief consisting, in part, of copies of his Grievances, appeals and responses thereto, are largely the same grievances documents which Defendants have submitted in support of their SMF. We find that the Exhibits submitted by both parities show, in part, that in the final denial of some of Plaintiff's Grievances which were fully exhausted, it was referenced that the DOC's Bureau Clinical Services, of which Defendant Ellers was Chief, reviewed Plaintiff's complaints about not being given Z-Code single cell status as well as Plaintiff's medical and mental health care, and determined that the denial of Z-Code status to Plaintiff as well as Plaintiff's care were reasonable and appropriate. (*See* Doc. 52-1, pp. 46-47). As such, Plaintiff contends that he has sufficiently shown that he exhausted his DOC administrative remedies with respect to his Eighth Amendment claims against Defendant Ellers.

Furthermore, Plaintiff states that he named Defendants Miskell and Leskowsky in his grievances for their refusal to accommodate his disability by failing to properly treat him and by

failing to prescribe him Z-Code single cell status, as described above. Plaintiff states that he filed the proper grievances and exhausted all of his administrative remedies, and that he met his burden under the PLRA prior to bringing this action in federal court. (*Id.*, p. 7). Plaintiff's evidence shows, in part, that in the denial of some of Plaintiff's Grievances appeals which were fully exhausted, it was referenced that Defendant Leskowsky, as Acting Corrections Health Care Administrator, reviewed Plaintiff's complaints about not being given Z-Code single cell status as well as Plaintiff's medical and mental health care, and that Leskowsky determined that Plaintiff was provided with required care and that Plaintiff did not have disabilities or conditions which precluded him from being double celled. It was also noted that Leskoswky found that Plaintiff did not have any medical symptoms that warranted a single cell. (*See* Doc. 52-1, p. 42). Thus, Plaintiff maintains that he has sufficiently shown that he exhausted his DOC administrative remedies with respect to his Eighth Amendment claims against Defendant Leskowsky.

As mentioned, Defendants point out that Plaintiff exhausted his DOC administrative remedies with respect to only a verbal abuse claim against Defendant Miskell, which is not a claim at issue in the present case, and that Plaintiff did not exhaust his instant Eighth Amendment claims against Miskell.

A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted." 42 U.S.C. §1997e(a). As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies prior to filing a civil rights suit. *See Mitchell, supra; Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court

20

reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law, including this *Bivens* action. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner,* 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted). Further, the Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes,* 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner,* 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit." *Lombardi v. Pugh,* 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted). Further, "the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to completing the administrative remedy process." *Id.*(citation omitted); *See also Mitchell v. Dodrill,* 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Court in *Mitchell v. Dodrill,* 696 F.Supp.2d at 465, stated:

> The United States Court of Appeals for the Third Circuit has not issued a precedential opinion on the issue. However, in a non-precedential opinion, the Court found that the lower court had properly dismissed the plaintiffs complaint because his exhaustion attempt took place after he filed his *Bivens* claim. *Oriakhi v. United States,* 165 Fed.Appx. 991, 993 (3d Cir.2006) (not precedential). "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to

21

determine if exhaustion has occurred." *Id.* (quoting *Johnson*, 340 F.3d at 627–28). The Court further stated that "[t]he fact that [the plaintiff] completed the administrative review process before the District Court reached the exhaustion question is of no consequence. Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi,* 165 Fed.Appx. at 993 (citing *Johnson,* 340 F.3d at 627–28). (not precedential).

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted). The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Id.; Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno,* 204 F.3d 65, 71 (3d Cir. 2000). *See also Cooper v. Sniezek,* 2010 WL 3528848, *7-*8 (M.D. Pa. 9-7-10); *Mitchell v. Dodrill,* 696 F.Supp.2d at 463-64.

The *Cooper* Court stated:

> A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v.*

> *Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper
> exhaustion demands compliance with an agency's deadlines and other
> critical procedural rules because no adjudicative system can function
> effectively without imposing some orderly structure on the course of its
> proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted
> federal-court interference with the administration of prisons, and thus
> seeks to 'affor[d] corrections officials time and opportunity to address
> complaints internally before allowing the initiation of a federal case." *Id.*
> at 93 (quoting *Nussle,* 534 U.S. at 525). Failure to substantially comply
> with procedural requirements of the applicable prison's grievance system
> will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d
> 218, 227-32 (3d Cir.2004).

2010 WL 3528848, *7.

Defendants state that Plaintiff fully exhausted four of his Grievances regarding his complaints about being double celled and about his health care during the relevant time of this case, January 1, 2008 through July 13, 2010, the date Plaintiff filed his Complaint. Defendants state that Defendant Ellers was not named in any of these four Grievances, and that Ellers is entitled to summary judgment. Defendants state that Defendant Leskowsky was not mentioned in any of Plaintiff's four Grievances which were exhausted and that Leskowsky only responded to two of these Grievances, Nos. 266650 & 286422. (Doc. 46, pp. 6-7). Thus, Defendants conclude that Plaintiff did not exhaust his constitutional claims as against Ellers and Leskowsky. Based on the undisputed evidence as detailed above, we agree with Defendants that Plaintiff did not sufficiently and properly exhaust his remaining Eighth Amendment claims as against Ellers and Leskowsky.

As to Defendant Miskell, Defendants state that Miskell was specifically mentioned in Plaintiff's Grievance No. 266652 which was fully exhausted, but Plaintiff only complained that Miskell verbally abused him in this Grievance. Thus, Defendants contend that Plaintiff only

exhausted a claim of verbal abuse as against Miskell. (*Id.*, p. 7). We also agree with Defendants that in Plaintiff's Grievance No. 266652 referencing Defendant Miskell which was fully exhausted, Plaintiff only complained that Miskell verbally abused him in this Grievance. Based on the undisputed evidence as detailed above, we agree with Defendants that Plaintiff did not sufficiently and properly exhaust his remaining Eighth Amendment claims as against Miskell.

As support, Defendants assert as follows:

> The U.S. Supreme Court has rejected the Sixth Circuit's requirement that an inmate could only sue those defendants identified in his inmate grievance, because the state's grievance policy did not contain such a requirement. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Because the PLRA does not contain any such requirement, it held that the prison's grievance system determined the level of detail required in inmate grievances for purposes of exhaustion. *Id. See also Spruill v. Gillis*, 372 F.3d 218, 226 (3d Cir. 2004) (The Third Circuit held that the failure to exhaust under the PLRA constitutes a procedural default under the PLRA; the PLRA does not require "simple exhaustion" but rather "proper exhaustion"; plaintiff inmate's failure to identify a medical defendant constituted procedural default).

(Doc. 46, pp. 5-6).

We agree with Defendants. Also, we note that Pennsylvania's inmate grievance system does mandate that inmates name all relevant persons. *See Robles v. Casey*, 2012 WL 6931972 (M.D. Pa. Sept. 27, 2012) adopted by 2013 WL 308699 (M.D. Pa. Jan. 25, 2013). Further, DOC Policy DC-ADM 804, entitled "Inmate Grievance System Policy," reads in relevant part: "The inmate will identify any person(s) who may have information that could be helpful in resolving the grievance." *Id.* As the Court in *Robles* found, the Third Circuit in *Spruill* interpreted this DOC Policy to mean that an inmate will be in procedural default unless he can adequately explain why he neglected to name a defendant in his grievance. *Id.*(citing 372 F.3d at 226).

24

We agree with Defendants that Plaintiff Hughes has not properly exhausted his available administrative remedies with respect to them and, we will recommend that Defendants Miskell, Ellers and Leskowsky be granted summary judgment in their favor. We do not find that prison officials were on notice that Plaintiff was implicating Defendants Miskell, Ellers and Leskowsky with respect to his Eighth Amendment claims regarding the refusal to place him Z-Code status. *See Spruill*, 372 F.3d at 234; *Robles, supra.*

The U.S. Supreme Court held in *Jones* that proper exhaustion of administrative prison remedies requires compliance "'with the applicable procedural rules,' [] - rules that are defined not by the PLRA, but by the prison grievance process itself." 549 U.S. at 218 (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). The Supreme Court found that although the requirement for grievance detail will vary among different prison systems, it is these individual requirements that delineate what constitutes proper exhaustion. 549 U.S. at 218. Accordingly, in the present case, we must look to the grievance procedure in place for inmates of the Pennsylvania DOC. *See Gravley v. Tretinik*, 414 F. App'x 391, 393-94 (3d Cir. 2011); *Spruill*, 372 F.3d at 231-32; *Bibbs v. Klem*, Civil No. 3:CV-08-2279, 2011 WL 838908, at *3 (M.D. Pa. Mar. 4, 2011); *Miller v. Schuylkill Cnty. Prison*, Civil No. 1:CV-07-0331, 2007 WL 3342766, at *4 (M.D. Pa. Nov. 9, 2007).

The Third Circuit has found three reviewing stages within the Pennsylvania DOC's grievance system: "Initial Review (DC-ADM-804 Part VI.B), which addresses the inmate's filed grievance; the first appeal from the Initial Review, known as Appeal to Facility Manager (DC-ADM-804 Part VI.C); and a second and final appeal, the Appeal to Secretary's Office of Inmate Grievances and Appeals

25